**ORIGINAL**

Mark Martel, State Bar No. 147970
Attorney At Law
425 Sherman Ave. #330
Palo Alto, CA 94306
Tel: (650) 470-2650
Fax: (650) 470-2654
e-mail: markmartel@aol.com

Attorney for Plaintiff Scott Olsen

FILED
2012 DEC 13 P 3: 14
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

Scott Olsen, an individual,

    Plaintiff,

v.

The City of Oakland; the Oakland Police Department; Robert Roche; and Does 1-10,

    Defendants.

Case No. C 12 6333   LB

**COMPLAINT FOR DAMAGES**

42 U.S.C. §1983 and Pendent State Law Claims

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Plaintiff Scott Olsen is an Iraq war veteran who attended the October 25, 2011 Occupy Oakland demonstration to lend support to protestors. Scott was standing still and quiet with another veteran between protestors and a line of law enforcement officers as a statement of support for the Occupy movement, including its opposition to U.S. military involvement in Iraq. A line of law enforcement officers was about twenty feet away from Mr. Olsen. Without warning, one of the officers fired a high-velocity round made of metal pellets (a "bean bag" round) at Mr. Olsen, hitting him in the head. The impact fractured Mr. Olsen's skull and caused severe hemorrhaging of his brain. As a result of his injuries, Mr. Olsen lost his ability to speak and perform basic mental and physical functions. Although he has recovered much of his speech and functions through intensive therapy, he still frequently has difficulty speaking, concentrating, and remembering things.

2. This action seeks to vindicate Mr. Olsen's right to be free from unlawful use of force and his First Amendment right to free speech. Defendants violated these rights by failing to adequately train and supervise Oakland Police Department (OPD) officers involved in the October 25, 2011 Occupy Oakland operation, particularly regarding OPD's own prohibition against using bean bag rounds for crowd control purposes; OPD's prohibition against firing a bean bag round at a person's head in any circumstances. Mr. Olsen's injuries were also the result of a longstanding pattern and practice by OPD of failing to appropriately investigate and discipline officers who use unlawful force against citizens.

## JURISDICTION AND VENUE

3. This action arises under Title 42 of the United States Code, §1983. This Court has jurisdiction over the action under 28 U.S.C. §§1331 and 1343.

4. The pendent state claims alleged herein arise from the same facts as the federal claims, such that all claims alleged herein would ordinarily be prosecuted in a single action. This Court therefore has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

5. All events alleged herein occurred in the County of Alameda, California. Venue therefore lies in this Court under 28 U.S.C. §1391(b)(2).

Complaint                                              -2-                                         Case No. _____

6. Within six months of the events subject of this lawsuit, Plaintiff filed a claim against the City of Oakland in accordance with California Government Code §910 et seq. The City of Oakland rejected the claim on June 15, 2012. Plaintiff is filing this action within six months of the City of Oakland's rejection of Plaintiff's claim, as required by California Government Code §945.6.

## PARTIES

7. Plaintiff Scott Olsen is an individual who lived in Daily City, California at the time of the incident subject of this action, and presently lives in Oakland, California.

8. Defendant City of Oakland is a division of the State of California.

9. Defendant Oakland Police Department is an agency of the City of Oakland.

10. Defendant Robert Roche is an Oakland Police officer who fired a tear gas grenade at Occupy protestors who were attempting to aid Mr. Olsen after he had been shot in the head by an as-yet unidentified Oakland police officer.

11. Plaintiffs are unaware of the true names and capacities of Defendants Does 1 through 50, and therefore sues them under fictitious names. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 50 were each responsible for the injuries and damages suffered by Plaintiffs. Plaintiffs will amend the complaint to substitute the true names of Does 1 through 50 if and when they learn those names.

12. In doing the acts and omissions alleged herein, Defendants and each of them acted as the agent, employee, and/or in concert with all other Defendants.

13. In doing the acts and omissions alleged herein, Defendants and each of them acted within the course and scope of their employment for the State of California and/or the City of Oakland, under color of authority, and under color of law.

## FACTUAL ALLEGATIONS

14. Scott Olsen became a United States Marine in 2005. He served two 7-8 month tours of duty in Iraq in 2006-2008. His experiences and observations in Iraq caused him to become disillusioned with the United States' military operation there. After completing his military service in November 2009, Mr. Olsen joined a group of veterans opposed to the war in Iraq named Iraq

Veterans Against the War (IVAW). IVAW has since 2004 advocated for withdrawal of U.S. forces from Iraq.

15. Starting in July 2011, Mr. Olsen worked full time as a computer systems administrator for Opswat, a software company located in San Francisco.

16. In 2011, Mr. Olsen became interested in the "Occupy" movement. This movement began as a group of several hundred protestors who occupied a park near Wall Street in New York's financial district to express opposition to the U.S./World financial system, which they described as unfair and corrupt. The movement subsequently into a nationwide protest movement to express opposition to social and economic inequality as inequitable, anti-democratic, and unstable. A corollary objective of the Occupy Movement has been to advocate for the withdrawal of U.S. military forces from Iraq and Afghanistan. These objectives attracted Mr. Olsen's interest.

17. On the morning of October 25, 2011, Occupy protestors congregated in Frank Ogawa Plaza in Oakland. Oakland police officers forcibly removed the protestors. That evening, Occupy supporters organized a street march to protest the eviction of the protestors from Frank Ogawa Plaza and to resume the demonstration.

18. Mr. Olsen learned of the street march in Oakland; put on his Marine fatigues; and went to join the street march in Oakland. He wore his military uniform in order to demonstrate military veteran support for the Occupy Movement and to convey the message that protesting economic and political inequities was patriotic and democratic. In conveying this message, Mr. Olsen was aware of critiques of the Occupy Movement as un-American, and he intended to counter such criticism by attending the protest march in military dress.

19. When Mr. Olsen arrived in Oakland, he went to the site of the protest march at 14th & Broadway, where he met with a friend of his who was also a veteran and was wearing his Navy uniform. Several hundred protestors were there, many shouting slogans of the Occupy Movement. The protestors were behind a set of barricades; several dozen police officers were behind a second set of barricades. Some of the officers were armed with high-powered rifles, some of which were loaded with munitions called drag-stabilized bean bag rounds. These munitions consist of metal pellets

wrapped in a nylon-type cloth. Bean bag rounds are fired at high velocity and cause severe pain and bruising when they strike soft tissue. They are designed and intended to be fired directly at and strike persons, unlike for example, a tear gas canister, which is designed and intended to be fired near, but not directly at, individuals. Because of the damage and injury that bean bag rounds cause, the Oakland Police Department policy prohibits their use for crowd control purposes, and prohibits firing them at the neck or head of an individual.

20. Mr. Olsen and his friend positioned themselves between the two barricades and about 20 feet from the police officers. They stood there, still, as a show of support for the protestors. Neither Mr. Olsen nor his friend did anything that was or could have been interpreted as illegal, dangerous, or threatening. They simply stood still and quiet between the other protestors and the police officers.

21. Without warning, an Oakland police officer (Doe 1) located about 20 feet away from Scott Olsen and armed with a high-powered rifle loaded with a bean bag round, aimed his weapon at Scott Olsen and fired. The bean bag round struck Mr. Olsen in the head, fracturing his skull in several places and causing trauma and hemorrhaging to his brain. Mr. Olsen immediately fell to the street. Either the fall or the initial impact of the bean bag round fractured both a vertebra in Mr. Olsen's neck, and his facial orbital bone.

22. Plaintiff has requested that the City of Oakland identify the officer who shot Mr. Olsen; the City has refused to do so. Plaintiff has been unable to independently determine that individual's identity, and therefore names him herein as "Doe 1".

23. Immediately after Mr. Olsen fell injured to the street, a group of protestors ran over to see how badly he was hurt and to help him. Upon seeing this, Oakland Police officer Robert Roche raised his rifle and fired a tear gas grenade into the group of people who had rushed over to aid Mr. Olsen. One or more OPD officers also fired munitions such as rubber bullets at protestors who attempted to aid Mr. Olsen. The firing of tear gas and projectiles at protestors attempting to check on and assist Mr. Olsen was apparently intended to prevent protestors from assisting Mr. Olsen.

24. No law enforcement officer or other agent of the City of Oakland gave medical or other assistance to Mr. Olsen after he was critically injured by the shot to his head.

25. Instead, protestors rushed Mr. Olsen to Highland Hospital, where he was admitted in critical condition with fractures of his skull, neck, and face, and cerebral hemorrhaging. Part of his skull was removed to relieve pressure on his brain and prevent death. When Mr. Olsen regained consciousness, he was unable to speak or perform other basic mental functions due to brain trauma.

26. After Mr. Olsen was injured, OPD officers:

- failed to report his injury to superiors;
- did not properly document the use of force against Mr. Olsen;
- did not inventory the weapon(s) and munition(s) used against Mr. Olsen;
- did not promptly and diligently obtain and preserve evidence concerning the use of force against Mr. Olsen, including witness statements, video and audio recordings of events; logs and inventories of weapons and ammunition; and
- did not prevent officers who were potential witnesses and/or subjects of investigation from communicating with each other about the use of force against Mr. Olsen.

27. These failures in Defendants' response to the use of force against Mr. Olsen were consistent with and part of a pattern and practice by Defendants of failing to document and to thoroughly and objectively investigate possibly unlawful use of force against citizens, particularly during protests.

28. The use of force against Mr. Olsen and Defendants' inadequate response to it are also consistent with and part of a pattern and practice by the Oakland Police Department of failing to adequately train officers in crowd control procedures; failing to adequately train OPD officers regarding appropriate use of weapons and munitions during protests; failing to adequately train OPD officers and to enforce OPD's crowd control policy; failure to properly document use of force, including maintaining inventories and logs of weapons and munitions used; failure to adequately supervise OPD officers to ensure compliance with OPD policies on crowd control and use of force, and with OPD, state, and constitutional standards governing the use of force; and failing to collect and preserve evidence related to use of force.

29. In the months after Mr. Olsen's injury, Mr. Olsen underwent *months of intensive therapy to regain his speech. He has recovered much, but not all, of his language faculties. He has

persistent problems concentrating and remembering things. Because of these difficulties with his mental functions as result of his injuries, Mr. Olsen was unable to work full-time when he resumed employment with Opswat in February 2012. In March 2012, Opswat terminated Mr. Olsen's employment because it wanted a full-time employee to perform the tasks that Mr. Olsen had performed.

30. Within six months after being shot, Mr. Olsen filed a claim against the City of Oakland pursuant to California Government Code §910 et. seq. At the time Mr. Olsen submitted his claim, the City of Oakland was aware of and/or had access to substantial information demonstrating that Mr. Olsen was doing nothing dangerous, threatening, or unlawful when he was shot; that an Oakland Police Officer shot him in the head with a beanbag munition from about 20 feet away; and that this use of force directly violated the Oakland Police Department's crowd control policy as well as accepted law enforcement standards for use of force in California. Despite having all this information, the City of Oakland summarily denied Mr. Olsen's claim. This denial of Mr. Olsen's obviously valid claim was part of a pattern and practice on the part of the City of Oakland of issuing rubber-stamped denials of claims alleging unlawful use of force by Oakland Police officers without undertaking a legitimate investigation of allegations and responding to them based on facts, law, and its own policies.

31. The City of Oakland commissioned outside police procedures consultant The Frazier Group to conduct an independent study of the Oakland Police Department's use of force against Occupy Oakland protestors, including Scott Olsen. The Frazier Group concluded that OPD officers had been inadequately trained; that the OPD operations against the Occupy protestors had been poorly planned; and indicated that OPD officers had used excessive and possibly criminal force against Mr. Olsen on October 25, 2011, in violation of OPD crowd control policies and procedures.

32. On October 3, 2012, the OPD Independent Monitor appointed by the United States District Court for the Northern District of California endorsed the conclusions and recommendations of the Frazier report.

33. On October 12, 2012, Oakland Police Chief Howard Jordan announced that an OPD officer had fired the beanbag round that critically injured Scott Olsen. Chief Jordan also announced that he would seek to fire two officers; demote a third officer; and suspend 15 other officers for their use of force against Occupy Oakland protestors, including Scott Olsen. However, Plaintiff is informed and believes that to date no officer has been disciplined for the actions against Mr. Olsen.

## STATEMENT OF DAMAGES

34. Defendants' actions that caused Scott Olsen's injuries were intentional, despicable, oppressive, punitive, and malicious, and done with a willful and conscious disregard of Mr. Olsen's rights and safety, justifying an award of punitive damages.

35. Defendant Robert Roche's firing of a tear gas grenade at Scott Olsen and the protestors who ran over to him after he had been shot and had fallen to the street was intentional, despicable, oppressive, punitive, and malicious, and done with a willful and conscious disregard of Mr. Olsen's rights and safety, justifying an award of punitive damages.

## FIRST CAUSE OF ACTION
### Excessive Use Of Force
### 42 U.S.C. §1983
### (Against All Defendants, including Does 1-50)

36. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

37. Defendants used unreasonable, excessive, and unlawful force against Scott Olsen on October 25, 2012. Firing a bean bag round at Mr. Olsen while he was standing still and quiet, and committing no unlawful, dangerous, or threatening act served no reasonable or legitimate law enforcement purpose; it violated OPD's own crowd control policies and procedures; was substantially likely to cause serious injury to Mr. Olsen; it did in fact seriously injure Mr. Olsen.

## SECOND CAUSE OF ACTION
### Excessive Use Of Force/Failure to Train
### 42 U.S.C. §1983
### (Against Defendant City of Oakland)

38. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

39. Defendant City of Oakland and its Police Department failed to adequately train OPD officers on appropriate crowd control procedures, including OPD's own rules prohibiting use of

bean bag rounds for crowd control purposes, and OPD's rule prohibiting firing of bean bag rounds at a person's head.

40. The City of Oakland's Police department had been on notice for years of the need to modify its practices and training regarding use of force at demonstrations. The City's failure to have appropriate practices, procedures, and training in place by the time of the October 25, 2011 Occupy Oakland protest demonstrated deliberate indifference of the need to train its officers adequately in use of force, particularly during citizen protests.

## THIRD CAUSE OF ACTION
### Excessive Use Of Force/Failure to Supervise
### 42 U.S.C. §1983
### (Against Defendant City of Oakland)

41. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

42. Defendant City of Oakland and its Police Department failed to adequately supervise OPD officers during the October 25, 2011 Occupy Oakland demonstration in order to ensure compliance with OPD crowd control policies, including OPD's prohibition on the use of bean bag munitions for crowd control purposes; its prohibition on firing bean bag rounds at a person's head, and generally to ensure that use of force complied with applicable California police standards and practices, and with federal constitutional standards. The City and its Police Department also failed to supervise OPD officers to ensure that evidence related to the use of force against Mr. Olsen was collected and preserved; to ensure that inventories and logs of weapons and munitions were properly maintained; to ensure that OPD investigators obtain statements from potential witnesses and potential subjects of investigation; to ensure that OPD investigators direct OPD officers not to collaborate with other officers about their accounts of the use of force against Mr. Olsen.

43. The City of Oakland's Police department had been on notice for years of the need to modify its supervision of officers' use of force; documentation of use of force; and investigation of use of force, particularly force used during demonstrations. The City's failure to adequately supervise OPD officers during the October 25, 2011 Occupy Oakland protest demonstrated

deliberate indifference of the need to supervise its officers adequately in use of force, particularly during citizen protests.

### FOURTH CAUSE OF ACTION
### Excessive Use Of Force/Ratification
### 42 U.S.C. §1983
### (Against Defendant City of Oakland)

44. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

45. Defendants pattern and practice of using unlawful and excessive force on citizens, particularly protestors; failing to adequately train OPD officers in crowd control techniques, prohibited use of certain munitions for crowd control purposes; failing to adequately supervise OPD officers during crowd control actions; failing to collect and preserve evidence related to possibly unlawful use of force; failing to maintain adequate inventories and logs of weapons and munitions used; failing to thoroughly investigate possibly unlawful use of force; and failing to discipline officers who violate OPD policies on use of force or who use unlawful force on citizens, have effectively condoned and ratified unlawful use of force against citizens, and led to the unlawful shooting of Scott Olsen.

### FIFTH CAUSE OF ACTION
### Violation of First Amendment Right to Free Speech
### 42 U.S.C. §1983
### (Against All Defendants, including Does 1-50)

46. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

47. By participating in the October 25, 2011 Occupy march, Scott Olsen was expressing his opinion and views in support of the objectives of the Occupy Movement, including advocacy of a more equitable, transparent, and democratic economic and political system in the United States. By wearing his Marine fatigues at the march and standing at attention between other Occupy protestors and law enforcement officers, Mr. Olsen was expressing his opinion and views that the Occupy movement's expression of its views was patriotic and democratic, and should be defended.

48. By firing a bean bag round at Mr. Olsen while he was doing nothing more than expressing his views, Defendants intended to and did interfere with Mr. Olsen's right to political speech protected by the First Amendment.

## SIXTH CAUSE OF ACTION
### Failure to Provide Medical Treatment
### 42 U.S.C. §1983
### (Against All Defendants, Including Does 1-50)

49. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

50. Defendants owed Scott Olsen a duty to provide medical treatment after he was shot and critically injured by Oakland Police officer, Defendant "Doe 1" on October 25, 2011.

51. Defendants violated this duty by not providing any medical assistance to Mr. Olsen after Doe 1 critically injured him.

52. Defendants' failure to provide medical assistance to Mr. Olsen was caused by (1) improper practices and policies of the Oakland Police Department and its agents; (2) inadequate training, supervision, or discipline of OPD agents; and/or (3) deliberate indifference of Defendants.

## SEVENTH CAUSE OF ACTION
### Battery
### California Law
### (Against All Defendants, including Does 1-50)

53. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

54. Defendant Doe 1 intentionally fired a bean bag round at Scott Olsen, with the intention of having the round strike Mr. Olsen.

55. Doe 1's firing of the bean bag round at Mr. Olsen was an unreasonable and excessive use of force.

56. Scott Olsen did not consent to the use of force against him.

57. Mr. Olsen was injured as a result of Doe 1's use of force against him.

58. Doe 1's use of unreasonable and excessive force against Mr. Olsen was a substantial factor in harming him.

## EIGHTH CAUSE OF ACTION
### Negligence
### California Law
### (Against All Defendants, including Does 1-50)

59. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

60. Defendants owed a duty of care to Occupy Oakland protestors, including Mr. Olsen, to ensure that they did not cause unnecessarily injury.

61. Defendants' failure to train and supervise OPD officers involved in the October 25, 2011 Occupy Oakland operation, particularly in proper crowd control procedures, and especially the appropriate use and non-use of particular weapons and munitions, violated their duty of care to Mr. Olsen.

62. Doe 1's firing of a bean bag round at Mr. Olsen, striking him in the head, also violated the duty of care owed to Mr. Olsen.

### NINTH CAUSE OF ACTION
### Intentional/Negligent Infliction of Emotional Distress
### (Against All Defendants, including Does 1-50)

63. Plaintiffs incorporate the preceding paragraphs as if set forth here in full.

64. Defendants use of force against Scott Olsen was unjustified and outrageous, and has caused him severe emotional distress.

### TENTH CAUSE OF ACTION
### Violation of Constitutional and Civil Rights
### California Civil Code §52.1
### (Against All Defendants, including Does 1-50)

65. The United States Constitution, the Fourth Amendment, and the California Constitution, Article I §13, guarantee the right of persons to be from excessive force.

66. Defendants' acts and omissions violated Scott Olsen's rights to be from excessive force.

### RELIEF REQUESTED

67. For the foregoing reasons, Plaintiffs request the following relief:

(a)  General and special damages according to proof;

(b)  Exemplary damages;

(c)  Costs and attorney's fees under 42 U.S.C. §1988 and California Civil Code §52.1;

(d)  Such other relief as the Court deems proper.

Dated: December 13, 2012

_MARK MARTEL_
Mark Martel
Attorney for Plaintiff Scott Olsen

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

Dated: December 13, 2012

_____Mark Martel_____
Mark Martel
Attorney for Plaintiff Scott Olsen