JAMES B. CHANIN (SBN# 76043)
JULIE M. HOUK   (SBN# 114968)
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, California  94705
Telephone: 510.848.4752; Facsimile: 510.848.5819
Email: jbcofc@aol.com

RACHEL LEDERMAN (SBN 130192)
Rachel Lederman & Alexis C. Beach
Attorneys at Law
558 Capp Street
San Francisco, CA  94110
Telephone: 415.282.9300; Facsimile: 415.285.5066
Email:  rachel@beachledermanlaw.com

Attorneys for Plaintiff
Scott Olsen

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT OLSEN,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF OAKLAND; HOWARD JORDAN, individually and in his capacity as Chief of Police for the City of Oakland; ERIC BRESHEARS, individually and in his capacity as a Deputy Chief of Police for the City of Oakland; PAUL FIGUEROA, individually and in his capacity as a Captain of Police for the City of Oakland; ROBERT ROCHE or DOE 1, individually and in his capacity as a police officer for the City of Oakland; DOES 2-100, inclusive,<br><br>    Defendants. | CASE NO:  C12-06333 SI<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>**(Violation of Civil Rights, 42 U.S.C. Section 1983; and Supplemental Claims)**<br><br><br>**JURY TRIAL DEMANDED** |

1.      Plaintiff Scott Olsen is an Iraq war veteran who attended the October 25, 2011 Occupy Oakland demonstration to lend support to protestors. Scott was standing still and quiet with another veteran between protestors and a line of law enforcement officers as a statement of support for the Occupy movement, including its opposition to U.S. military involvement in Iraq.  A line of law enforcement officers was about twenty feet away from Mr. Olsen. Without warning, one of the officers, whom Plaintiff is informed and believes and thereon alleges was Oakland Police Officer, Robert Roche or Doe 1, fired a high-velocity round made of metal pellets (a "bean bag" round) at Mr. Olsen, hitting him in the head. The impact fractured Mr. Olsen's skull and caused severe hemorrhaging of his brain. As a result of his injuries, Mr. Olsen lost his ability to speak and perform basic mental and physical functions. Although he has recovered much of his speech and functions through intensive therapy, he still frequently has difficulty speaking, concentrating, and remembering things.  **In fact, Mr. Olsen suffered permanent injuries to his brain, which have prevented him from continuing to work at the capacity he was able to prior to the incident.  Mr. Olsen also continues to suffer from the devastating consequences of being shot in the head with the bean bag round each and every day of his life.**

2.      This action seeks to vindicate Mr. Olsen's right to be free from unlawful use of force and his First Amendment right**s** to free speech **and association**.  Defendants **City of Oakland; Howard Jordan and/or Does 6-100 and/or each of them, violated the Plaintiff's constitutional rights by maintaining customs, policies and/or practices which foreseeably would result in constitutional violations, such as those suffered by the Plaintiff, and/or by their deliberate indifference in the hiring, training, supervision and discipline of City of Oakland** Police Department (OPD) officers involved in the October 25, 2011, Occupy Oakland operation.  **Plaintiff is informed and believes and thereon alleges that said customs, policies**

**and/or practices encouraged, tacitly authorized and/or condoned: the use of excessive force; the failure to report the use of excessive force; the failure to hold officers and supervisors accountable for the use of excessive force on citizens; the failure to enforce crowd control and other policies which were intended to prevent the use of excessive force on civilians and the violation of their rights to free speech and freedom of association by City of Oakland police officers during demonstrations; the use of dispersal devices and so-called "less lethal" weapons and munitions against non-violent individuals; the failure to obtain medical assistance for persons injured as a result of the OPD's use of "less-lethal" weapons and dispersal devices and/or other customs, policies and/or practices.** Mr. Olsen's injuries were also the result of a longstanding pattern and practice by ~~OPD~~ **Defendants City of Oakland, Howard Jordan and/or Does 6-100 and/or each of them,** of failing to appropriately investigate and discipline officers who use unlawful force against citizens **and/or otherwise violated their constitutional rights.**

## JURISDICTION AND VENUE

3.      This action arises under Title 42 of the United States Code, §1983.  This Court has jurisdiction over the action under 28 U.S.C. §§1331 and 1343.

4.      The pendent state claims alleged herein arise from the same facts as the federal such that all claims alleged herein would ordinarily be prosecuted in a single action. This Court therefore has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

5.      All events alleged herein occurred in the County of Alameda, California. Venue therefore lies in this Court under 28 U.S.C. §1391(b)(2).

6.      Within six months of the events subject of this lawsuit, Plaintiff filed a claim against the City of Oakland in accordance with California Government Code §910 et seq.

The City of Oakland rejected the claim on June 15, 2012. Plaintiff **filed** this action within six months of the City of Oakland's rejection of Plaintiff's claim, as required by California Government Code §945.6.

### PARTIES

7.     Plaintiff, Scott Olsen is an individual who lived in Daily City, California at the time of the incident subject of this action, and presently lives in Oakland, California.

**8.     Defendant City of Oakland is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California**

**9.     Defendant, Howard Jordan (named in place of Doe 2), was the Chief of Police for the City of Oakland at the time of the subject incident, was the City of Oakland's policy-maker with respect to its customs, policies and practices related to the City of Oakland Police Department and/or was personally involved in the planning, execution, supervision and subsequent investigation(s) of the OPD's actions related to Occupy Oakland on October 25, 2011, and the events giving rise to the Plaintiff's claims. Defendant Jordan is being sued in his individual and official capacities.**

**10.     Defendant, Eric Breshears (named in place of Doe 3), was a Deputy Chief of Police for the City of Oakland, was assigned as the "Incident Commander" for the "Second Operational Period" at the time of the subject incident and was personally involved in the planning, execution and supervision of the OPD's actions relating to Occupy Oakland on October 25, 2011 and the events giving rise to the Plaintiff's claims. Defendant Breshears is being sued in his individual and official capacities.**

**11.     Defendant, Paul Figueroa (named in place of Doe 4), was a Captain of Police for the City of Oakland, was the "Operations Chief" on scene at the time and location of the subject incident, was personally involved in the planning, execution and**

FIRST AMENDED COMPLAINT
Olsen v. City of Oakland, et al., Case No. C12-06333 SI          4

supervision of the OPD's actions related to Occupy Oakland on October 25, 2011, and the events giving rise to the Plaintiff's claims.  Defendant Figueroa is being sued in his individual and official capacities.

12.     Defendant, Roland Holmgren (named in place of Doe 5), was a Sergeant of Police for the City of Oakland and supervised a team of officers on October 25, 2011, including Officer Robert Roche or Doe 1, the police officer who shot the Plaintiff in the head with the bean bag round.  Defendant Holmgren is being sued in his individual and official capacities.

13.     ~~Defendant Oakland Police Department is an agency of the City of Oakland~~.

14.     Defendant, Robert Roche or Doe 1, was a Police Officer for the City of Oakland at the time of the subject incident.  Plaintiff is informed and believes and thereon alleges that Defendant Roche or Doe 1 deployed the bean bag round that struck Plaintiff, Scott Olsen, in the head during the subject incident.  Plaintiff is further informed and believes and thereon alleges that Defendant Roche or Doe 1 threw an explosive tear gas "blast" grenade in the vicinity of Mr. Olsen and protestors who were attempting to aid Mr. Olsen after he had been shot in the head by Defendant Roche or Doe 1.

15.     Plaintiff is unaware of the true names and capacities of Defendants Does 1, 6 through 100, and therefore sues them under fictitious names. Plaintiff is informed and believes, and on that basis alleges, that Does 1, 6 through 100, were each responsible for the injuries and damages suffered by Plaintiff and will amend the complaint to substitute the true names of Does 1, 6 through 100 if and when he ascertains the true names and capacities of said defendants.

16.     In doing the acts and omissions alleged herein, Defendants and each of them acted as the agent, employee, and/or in concert with all other Defendants.

17.     In doing the acts and omissions alleged herein, Defendants and each of them acted within the course and scope of their employment for ~~the State of California and/or the~~ Defendant City of Oakland, under color of authority, and under color of law.

## FACTUAL ALLEGATIONS

18.     Scott Olsen became a United States Marine in 2005. He served two 7-8 month tours of duty in Iraq in 2006-2008. His experiences and observations in Iraq caused him to become disillusioned with the United States' military operation there. After completing his military service in November 2009, Mr. Olsen joined a group of veterans opposed to the war in Iraq named Iraq Veterans Against the War (IVAW).  IVAW has since 2004 advocated for withdrawal of U.S. forces from Iraq.

**19.**     ~~Starting in July 2011,~~ **At the time of the incident,** Mr. Olsen **was employed** full time as a computer systems administrator for Opswat, a software company located in San Francisco **where he had worked since July 2011.**

20.     In 2011, Mr. Olsen became interested in the "Occupy" movement.  This movement began as a group of several hundred protestors who occupied a park near Wall Street in New York's financial district to express opposition to the U.S./World financial system, which they described as unfair and corrupt. The movement subsequently **evolved** into a nationwide protest movement to express opposition to social and economic inequality as inequitable, anti-democratic, and unstable. A corollary objective of the Occupy Movement has been to advocate for the withdrawal of U.S. military forces from Iraq and Afghanistan.  These objectives attracted Mr. Olsen's interest.

21.     On the morning of October 25, 2011, Occupy protestors congregated in Frank Ogawa Plaza in Oakland. Oakland police officers forcibly removed the protestors. That evening, Occupy supporters organized a street march to protest the eviction of the protestors from Frank Ogawa Plaza and to resume the demonstration.

22.     Mr. Olsen learned of the street march in Oakland; put on his Marine fatigues; and went to join the street march in Oakland. He wore his military uniform in order to demonstrate military veteran support for the Occupy Movement and to convey the message that protesting economic and political inequities was patriotic and democratic. In conveying this message, Mr. Olsen was aware of critiques of the Occupy Movement as un-American, and he intended to counter such criticism by attending the protest march in military dress.

23.     When Mr. Olsen arrived in Oakland, he went to the site of the protest march at 14th & Broadway, where he met with a friend of his who was also a veteran and was wearing his Navy uniform. Several hundred protestors were there, many shouting slogans of the Occupy Movement. The protestors were behind a set of barricades **and** several dozen police officers were behind a second set of barricades. Some of the officers were armed with high-powered rifles, some of which were loaded with munitions called drag-stabilized bean bag rounds. These munitions consist of metal pellets wrapped in a nylon-type cloth. Bean bag rounds are fired at high velocity and cause severe pain and bruising when they strike soft tissue. They are designed and intended to be fired directly at and strike persons, unlike for example, a tear gas canister, which is designed and intended to be fired near, but not directly at, individuals. Because of the damage and injury that bean bag rounds cause, the **City of Oakland Police Department's policy existing at the time of the incident prohibited** their use for crowd control purpose**s**, and prohibit**ed** firing them at the neck or head of an individual.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

24.     Mr. Olsen and his friend positioned themselves between the two barricades and about 20 feet from the police officers. They stood there, still, as a show of support for the protestors. Neither Mr. Olsen nor his friend did anything that was or could have been interpreted as illegal, dangerous, or threatening. They simply stood still and quiet between the other protestors and the police officers.

25.     Without warning, **Defendant Robert Roche or** Doe 1, **who was** located about 20 feet away from Scott Olsen and armed with a high-powered rifle loaded with a bean bag round, aimed his weapon at Scott Olsen and fired. The bean bag round struck Mr. Olsen in the head, fracturing his skull in several places and causing trauma and hemorrhaging to his brain. Mr. Olsen immediately fell to the street. Either the fall or the initial impact of the bean bag round fractured both a vertebra in Mr. Olsen's neck, and his facial orbital bone.

**26.     Plaintiff subsequently propounded an Interrogatory on the City of Oakland requesting that it identify the officer who shot Mr. Olsen. The City of Oakland responded to the Interrogatory, stating that, "The individual most likely to have fired the munition that hit Scott Olsen during the Occupy Oakland demonstration on October 25, 2011 was Officer Robert R. Roche of the Oakland Police Department."  Therefore, Plaintiff has alleged herein that Defendant Robert Roche or Doe 1 was the officer who shot Mr. Olsen in the head with the bean bag round.  Plaintiff reserves the right to amend this Complaint in the event that evidence obtained during the course of discovery shows that someone other than Defendant Roche (Doe 1) shot the Plaintiff in the head with the bean bag munition.**

27.     Immediately after Mr. Olsen fell injured to the street, a group of protestors ran over to see how badly he was hurt and to help him. Upon seeing this, Defendant Robert Roche **or Doe 1** ~~raised his rifle and fired a tear~~ **deployed** a ~~gas grenade~~ **CS Blast**

1   **grenade in the vicinity of both Mr. Olsen and the persons who** rushed over to aid Mr. Olsen,

2   **after he was shot in the head with the bean bag round and was seriously injured**. **The firing**

3   **of the CS Blast grenade in the vicinity of Mr. Olsen and the persons attempting to assist**

4   **Mr. Olsen was excessive and unreasonable under the circumstances and/or** was apparently

5   intended to prevent protestors from assisting Mr. Olsen.

6          28.   No law enforcement officer or other agent of the City of Oakland gave

7   medical or other assistance to Mr. Olsen after he was critically injured by the shot to his head.

8          29.   Instead, protestors rushed Mr. Olsen to Highland Hospital, where he was

9   admitted in critical condition with fractures of his skull, neck, and face, and cerebral

10  hemorrhaging.  Part of his skull was removed to relieve pressure on his brain and prevent death.

11  When Mr. Olsen regained consciousness, he was unable to speak or perform other basic mental

12  functions due to brain trauma.

13         30.   After Mr. Olsen was injured, OPD officers:

14         • failed to report his injury to superiors;

15         • did not properly document the use of force against Mr. Olsen;

16         • did not inventory the weapon(s) and munition(s) used against Mr. Olsen;

17         • did not promptly and diligently obtain and preserve evidence concerning use of
             force against Mr. Olsen, including witness statements, video and audio
18           recordings of events; logs and inventories of weapons and ammunition; and,

19         • did not prevent officers who were potential witnesses and/or subjects of **the**
             investigation from communicating with each other about the use of force against
20           Mr. Olsen.

21         31.   These failures in Defendants' response to the use of force against Mr.

22  Olsen were consistent with and part of a pattern and practice by Defendants of failing to

23

24                          FIRST AMENDED COMPLAINT
                   Olsen v. City of Oakland, et al., Case No. C12-06333 SI          9

1  document and thoroughly and objectively investigate ~~possibly~~ unlawful use of force against

2  citizens, particularly during protests.

3        32.    The use of force against Mr. Olsen and Defendants' inadequate response

4  to it are also consistent with and part of a pattern and practice by **Defendant City of Oakland**

5  **and its high ranking City and Police Department Officials** of failing to adequately train

6  **and/or supervise** officers in crowd control procedures; failing to adequately train **and/or**

7  **supervise** OPD officers regarding appropriate use of weapons and munitions during protests;

8  failing to adequately train **and/or supervise** officers **to obey and/or** enforce OPD's crowd

9  control policy; **failing** to properly document **the** use of force, including maintaining inventories

10  and logs of weapons and munitions used; **failing** to adequately supervise OPD officers to ensure

11  compliance with OPD policies on crowd control and use of force, and with OPD, state, and

12  constitutional standards governing the use of force; and failing to collect and preserve evidence

13  related to use of force.

14        33.    In the months after Mr. Olsen's injury, Mr. Olsen underwent ~~x~~months of

15  intensive therapy to regain his speech. He has recovered much, but not all, of his language

16  faculties. He has persistent problems concentrating and remembering things. Because of these

17  difficulties with his mental functions **and the other problems caused by the brain injury he**

18  **sustained in this incident**, Mr. Olsen was unable to **return to work in and at the same**

19  **capacity that he was able to work prior to the incident. As a result, Mr. Olsen has incurred**

20  **wage loss, damage to his earning capacity and career, and is informed and believes and**

21  **thereon alleges the he will continue to incur such damages for the foreseeable future, if not**

22  **for the rest of his life.**

23        34.    Within six months after being shot, Mr. Olsen filed a claim against the

24  City of Oakland pursuant to California Government Code §910 et. seq. At the time Mr. Olsen

submitted his claim, the City of Oakland was aware of and/or had access to substantial information demonstrating that Mr. Olsen was doing nothing dangerous, threatening, or unlawful when he was shot; that an Oakland Police Officer shot him in the head with a beanbag munition from about 20 feet away; and that this use of force directly violated the Oakland Police Department's crowd control policy as well as accepted law enforcement standards for use of force. ~~in California~~.  Despite having all this information, the City of Oakland summarily denied Mr. Olsen's claim.  This denial of Mr. Olsen's obviously valid claim was part of a pattern and practice on the part of the City of Oakland of issuing rubber-stamped denials of claims alleging unlawful use of force by Oakland Police officers without undertaking a legitimate investigation of allegations and responding to them based on facts, law, and its own policies.

**35.**     The City of Oakland commissioned outside police procedures consultant**, The Frazier Group, to conduct an independent study of the City of Oakland Police Department's response to Occupy Oakland on October 25, 2011, including the events relating to the incident involving the Plaintiff, Scott Olsen.**

**36.       Defendant City of Oakland later admitted in a press release that accompanied the publication of the Frazier Group's report, that the Frazier Group found the Oakland Police Department's response to the Occupy Oakland protest on October 25, 2011 was flawed by inadequate staffing, insufficient planning, lack of understanding of modern crowd management techniques, and outdated policies and protocols.  Said press release also noted that as the Frazier Group's review and analysis of the OPD's performance progressed, systemic shortcomings became clear, including policy and practice deficiencies surrounding leadership, accountability, communication, collaboration, technical expertise and organizational development that were determined to be not unique to October 25, 2011, or to subsequent Occupy Oakland events.  Rather, Defendant City of**

Oakland acknowledged, these problems were systemic within the department and often historically and legacy influenced.

37.     In reference to the incident in which Mr. Olsen was shot in the head with the bean bag munition, the Frazier Group found it "unsettling and not believable," that not a single officer reported the shooting or admitted seeing Mr. Olson fall to the ground after being seriously injured, particularly when there were 15-25 officers nearby. The Frazier Group also found the OPD's investigation of the incident involving the shooting of the Plaintiff to be "inadequate" and recommended that a criminal investigation of the incident be re-opened.

38.     On October 3, 2012, the OPD Independent Monitor appointed by the United District Court for the Northern District of California endorsed the conclusions and recommendations of the Frazier report.

39.     On October 12, 2012, **Defendant** Howard Jordan announced that an OPD officer had fired the beanbag round that critically injured Scott Olsen. Chief Jordan also announced that he would seek to fire two officers; demote a third officer; and suspend 15 other offices for their use of force against Occupy Oakland protestors, including Scott Olsen. However, **Defendant City of Oakland has not yet produced all the documents and records concerning the disciplinary action, if any, that was actually taken against members of the Oakland Police Department as a result of the subject incident, including evidence concerning the current status of any such disciplinary action.  Therefore, Plaintiff reserves the right to amend this Complaint when said evidence is produced, if necessary.**

### STATEMENT OF DAMAGES

40.     As a result of the acts and/or omissions of Defendants and/or each of them, as alleged herein, Plaintiff has suffered, and will likely suffer in the future, general

**damages, including, but not limited to, general damages for pain, suffering, emotional distress, permanent disabilities, permanent injuries, disfigurement and/or other general damages in amounts to be determined according to proof.**

41.      **Plaintiff also suffered, and will likely suffer in the future, special damages, including but not limited to, special damages for medical and related expenses; lost wages and benefits; damage to career and/or loss of earning capacity; vocational and occupational rehabilitation expenses and/or other special damages in amounts to be determined according to proof.**

42.      **The acts and/or omissions of Defendant Robert Roche or Doe 1 as alleged in this Complaint** were intentional, despicable, oppressive, punitive, ~~and~~ malicious, and**/or were** done with **a conscious and/or reckless** disregard of **Plaintiff's** rights and safety, justifying an award of punitive damages.

43.      **The deployment of a CS Blast grenade by Defendant Robert Roche or Doe 1** at **or about the vicinity where Scott Olsen had been shot and where people were gathered in an effort to provide him with aid and comfort**, was intentional, despicable, oppressive, punitive, ~~and~~ malicious, and**/or** was done with **a conscious and/or reckless** disregard of Mr. Olsen's rights and safety, justifying an award of punitive damages.

44.      **Plaintiff has also incurred, and will continue to incur, attorneys' fees and costs in amounts to be determined according to proof.**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. §1983/Individual Liability**
**(Against Defendants Robert Roche, Doe 1 and/or Does 6-100)**

45.      **Plaintiff** incorporate**s** the preceding paragraphs as if set forth here in full.

46.     In doing the acts complained of herein, defendants Robert Roche or Doe 1 and/or Does 6-100 and/or each of them, did act under color of state law to deprive plaintiff of certain constitutionally protected rights, including, but not limited to:

(a) the right to be free from unreasonable searches and seizures, including the right to be free from the use of excessive force and/or the right to receive reasonable medical care for serious injuries sustained as a result of the use of excessive force by law enforcement officers;

(b) the right to freedom of speech, expression and/or association;

(c) the right to equal protection of the law; and/or

(d) the right not to be deprived of liberty without due process of law.

47.     Said rights are substantive guarantees under the First, Fourth and/or Fourteenth Amendments to the United States Constitution.

48.     As a result of the violation of his constitutional rights by defendants Robert Roche or Doe 1 and/or Does 6 to 100 and/or each of them, plaintiff sustained the injuries and/or damages as alleged heretofore in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. Section 1983/Municipal Liability
### (Defendants City of Oakland and/or Does 6-100)

49.     Plaintiff incorporates the preceding and subsequent paragraphs as if set forth here in full.

50.     As against Defendants City of Oakland and/or Does 6-100 and/or each of them, Plaintiff further alleges that the acts and/or omissions alleged herein are indicative and representative of a repeated course of conduct by Defendant City of Oakland and members of its police department that is tantamount to a custom, policy or repeated

practice of condoning, ratifying and and/or tacitly encouraging the abuse of police authority and disregard for the constitutional rights of citizens, including the rights of the Plaintiff.

51.     Plaintiff is further informed and believes and thereon alleges that the acts and/or omissions alleged herein were the proximate result of a custom, policy, pattern or practice of deliberate indifference by Defendant City of Oakland, Does 6-100 and/or each of them, to the repeated violations of the constitutional rights of citizens by Defendant City of Oakland's police officers, which have included, but are not limited to, the repeated use of excessive force, including the repeated use of so-called, "less lethal" weapons and munitions, gas grenades and other weapons and munitions against non-violent demonstrators and other citizens; the repeated failure to fully implement and enforce crowd control policies, including, but not limited to the policy that was adopted as part of the settlements reached in *Coles v. City of Oakland*,  C03-2961 TEH (JL) and *Local 10 v. City of Oakland*, C03-2962 TEH (JL); the repeated failure to fully implement and enforce the reforms mandated by the non-monetary settlement agreement in *Delphine Allen v. City of Oakland*, *et al.,* Case No. C00-4599 TEH; the repeated failure to summon or provide reasonable medical care to persons seriously injured as a result of the use of excessive force by City of Oakland Police Officers; the repeated violation of the First Amendment rights of non-violent demonstrators to the free exercise of speech and/or freedom of association; the repeated failure to properly and/or adequately train, supervise and/or discipline officers with respect to the crowd control policy existing at the time of the subject incident; the repeated failure to properly and/or adequately train, supervise and/or discipline officers with respect to the use of excessive force; the repeated failure to properly and/or adequately train, supervise and/or discipline officers with respect to crowd control

techniques and the constitutional limitations on the use of force; the failure to adopt and fully implement an appropriate early warning system; policies, practices and customs which encouraged officers to conceal their own misconduct and misconduct by their colleagues and/or which encouraged them to collaborate on accounts of incidents where the rights of citizens were violated; the repeated failure by City of Oakland high ranking officials, police department managers and/or supervisors to hold officers accountable for violating the rights of citizens and/or other customs, policies and/or practices subject to continuing discovery.

52.     The aforementioned deliberate indifference, customs, policies or practices of Defendants City of Oakland, Does 6 to 100, and/or each of them, resulted in the deprivation of the constitutional rights of the Plaintiff, including, but not limited to, the following:

(a) the right to be free from unreasonable searches and/or seizures, including the right to be free from the use of excessive force and/or the right to receive reasonable medical care for serious injuries resulting from the use of excessive force by law enforcement officers;

(b)  the right to the free exercise of speech and/or freedom of association;

 (c) the right not to be deprived of liberty or property without Due Process of Law; and/or,

(d) the right to equal protection of the law.

53.     Said rights are substantive guarantees under the First, Fourth and/or Fourteenth Amendments to the United States Constitution.

54.     As a result of the violation of his constitutional rights by Defendants City of Oakland and/or Does 6-100 and/or each of them, Plaintiff sustained the injuries and/or damages as alleged heretofore in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth

**THIRD CLAIM FOR RELIEF**
**Supervisory Liability**
**42 U.S.C. §1983**
**(Against Defendants Howard Jordan, Eric Breshears,**
**Paul Figueroa, Roland Holmgren and/or Does 6-100)**

55.     Plaintiff incorporates the preceding and subsequent paragraphs as if set forth here in full.

56.     At the time of the subject incident, Plaintiff is informed and believes and thereon alleges that Defendants Howard Jordan, Eric Breshears, Paul Figueroa, Roland Holmgren, Does 6-100 and/or each of them, were policy-makers, managers and/or supervisors in the City of Oakland Police Department who were personally responsible for adequately and/or properly supervising, training and/or disciplining subordinate officers involved in the City of Oakland Police Department's response to the Occupy Oakland activities on October 25, 2011, including, but not limited to, Defendant Robert Roche, Doe 1 and/or Does 6-100 and/or each of them, to ensure that they did not violate the constitutional rights of citizens, including the constitutional rights of Plaintiff, during the subject incident.

57.     Plaintiff is further informed and believes and thereon alleges that said Defendants and/or each of them, were responsible for the planning, execution and/or supervision of the police action on October 25, 2011 by the City of Oakland Police

1   Department in connection with Occupy Oakland, including at the time of the subject

2   incident.

3           58.     Plaintiff is further informed and believes and thereon alleges that the

4   duties of said Defendants and/or each of them, included but were not limited to, training,

5   supervising and/or disciplining subordinate officers, including during the subject incident;

6   directing and/or supervising the use of force during the subject incident, including, but not

7   limited to, the use of "less lethal" weapons and munitions and/or and chemical weapons

8   and devices; directing and/or supervising the provision of necessary medical care for

9   serious injuries sustained by demonstrators as a result of the use of force by law

10  enforcement officers; directing and/or supervising use of force report writing, evidence

11  gathering and/or investigations into the use of force during the subject incident; directing

12  and/or supervising compliance with OPD crowd control policies, including the OPD's

13  prohibition on the use of bean bag munitions for crowd control purposes and/or the

14  prohibition against firing bean bag rounds at a person's head; supervising and/or directing

15  subordinate officers to generally ensure that the use of force by police officers complied

16  with federal constitutional standards and that the use of excessive force would be fully and

17  fairly investigation to ensure appropriate disciplinary and other remedial action was taken.

18          59.     Plaintiff is informed and believes and thereon states that said

19  Defendants and/or each of them, caused the violation of the Plaintiff's constitutional rights

20  as a result of their supervisory malfeasance and/or deliberate indifference to the need for

21  more or different training, supervision and/or discipline of the City of Oakland Police

22  personnel assigned to the subject incident, including, but not limited to,  Defendant Robert

23

24

1   Roche and/or Does 1, 6-100 and/or each of them, to prevent the foreseeable violation of the

2   Plaintiff's constitutional rights as alleged in this Complaint.

3          60.     As a result of said supervisory malfeasance and/or deliberate

4   indifference, Plaintiff suffered the injuries and damages alleged herein.

5                  WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

6                        FOURTH CLAIM FOR RELIEF
                                  Battery
7          (Against Defendants Robert Roche or Doe 1; City of Oakland; Does 6-100)

8          61.     Plaintiff incorporates the preceding paragraphs as if set forth here in full.

9          62.     Plaintiff is informed and believes and thereon alleges that Defendants

10  Robert Roche or Doe 1 and/or Does 6-100 and/or each of them, committed a battery on the

11  Plaintiff by firing a bean bag round at Scott Olsen, with the intention of having the round

12  strike Mr. Olsen.

13         63.     Said conduct by said Defendants and/or each of them was an

14  unreasonable and excessive use of force.

15         64.     Scott Olsen did not consent to the use of force against him.

16         65.     Mr. Olsen was injured as a result of the use of force against him by

17  Defendant Robert Roche or Doe 1.

18         66.     Said use of unreasonable and excessive force by said Defendants

19  and/or each of them against Mr. Olsen was a substantial factor in harming him.

20         67.     As a result of said battery, Plaintiff suffered the damages alleged

21  herein.

22         68.     Plaintiff is informed and believes and thereon alleges that said acts

23  were intentional, willful, malicious, oppressive and/or done with a conscious and/or

24
                                 FIRST AMENDED COMPLAINT
               Olsen v. City of Oakland, et al., Case No. C12-06333 SI          19

1  reckless disregard for the rights of the Plaintiff.  Therefore, Plaintiff prays for an award of

2  punitive damages against said Defendants and/or each of them.

3        69.    At the time said Defendants and/or each of them committed the

4  battery on Plaintiff, they and/or each of them, were acting within the course and scope of

5  their employment with the City of Oakland.  As a result, Defendant City of Oakland is

6  liable for the damages sustained by Plaintiff as a result of said battery under the doctrine of

7  *respondeat superior*.

8        WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

9
### FIFTH CLAIM FOR RELIEF
**Negligence**
**(Against all Defendants)**

10

11        70.    **Plaintiff incorporates** the preceding paragraphs as if set forth here in full.

12        **71.    At the time of the subject incident, Defendants Robert Roche or Doe**

13  **1, Howard Jordan, Eric Brashears, Paul Figueroa, Roland Holmgren and/or Does 6-100**

14  **and/or each of them, owed a duty to use reasonable care to prevent foreseeable injuries to**

15  **Occupy Oakland protestors, including to the Plaintiff.**

16        **72.    In doing the acts and/or omissions as alleged herein, said Defendants**

17  **and/or each of them, negligently breached their duty to use reasonable care, resulting in the**

18  **injuries and damages alleged herein to the Plaintiff.**

19        **73.    In doing the acts and/or omissions as alleged herein, said Defendants**

20  **and/or each of them, were acting within the course and scope of their employment with the**

21  **City of Oakland.  Therefore, Defendant City of Oakland is liable under the doctrine of**

22  ***respondeat superior* for the damages sustained by the Plaintiff as a result of the negligence**

23  **of the aforesaid Defendants.**

24

1        **WHEREFORE, Plaintiff prays for relief as hereinafter set forth.**

2              **SIXTH CLAIM FOR RELIEF**
            **Negligent Infliction of Emotional Distress**
3                **(Against all Defendants)**

4        **74.**     **Plaintiff incorporates** the preceding paragraphs as if set forth here in full.

5        **75.**     **The acts and/or omissions of Defendants Robert Roche or Doe 1,**

6  **Howard Jordan, Eric Breshears, Paul Figueroa, Roland Holmgren and/or Does 6-100**

7  **and/or each of them, were negligent. Said negligence caused and/or will continue to cause,**

8  **Plaintiff to suffer severe emotional distress.**

9        **76.**     **As a result of said Defendants' acts and/or omissions, Plaintiff**

10  **incurred damages, and will continue to incur damages, as a result of the negligent infliction**

11  **of emotional distress on him by Defendants and/or each of them.**

12        **77.**     **Said acts and/or omissions were done within the course and scope of**

13  **said Defendants' employment with Defendant City of Oakland. Therefore, Defendant City**

14  **of Oakland is liable as respondeat superior.**

15        **WHEREFORE, Plaintiff prays for relief as hereinafter set forth.**

16            **SEVENTH CLAIM FOR RELIEF**
         **Intentional Infliction of Emotional Distress**
17    **(Against Defendants Robert Roche or Doe 1, Does 6-100)**

18        **78.**     **Plaintiff incorporates** the preceding paragraphs as if set forth here in full.

19        **79.**     **Plaintiff is informed and believes and thereon alleges that the acts**

20  **and/or omissions of Defendant Robert Roche or Doe 1 and/or Does 6-100 and/or each of**

21  **them as alleged herein, were intentional and/or beyond what is expected in civilized society.**

22

23

80.     Said acts and/or omissions by said Defendants and/or each of them, foreseeably caused Plaintiff to suffer severe emotional distress and will continue to cause Plaintiff to suffer severe emotional distress in the future.

81.     As a result of said Defendants' acts and/or omissions, Plaintiff incurred damages, and will continue to incur damages, as a result of the intentional infliction of emotional distress on him by said Defendants and/or each of them.

82.     Plaintiff is informed and believes and thereon alleges that said acts were intentional, willful, malicious, oppressive and/or done with a conscious and/or reckless disregard for the rights of the Plaintiff.  Therefore, Plaintiff prays for an award of punitive damages against said Defendants and/or each of them.

83.     Said acts and/or omissions were done within the course and scope of said Defendants' employment with Defendant City of Oakland.  Therefore, Defendant City of Oakland is liable as *respondeat superior*.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**EIGHTH CLAIM FOR RELIEF**
Violation of Constitutional and Civil Rights
California Civil Code §52.1
(Against all Defendants)

84.     Plaintiff incorporates the preceding paragraphs as if set forth here in full.

85.     In doing the acts and/or omissions as alleged herein, Defendants and/or each of them, violated the Plaintiff's rights under the United States and/or California Constitutions, including, but not limited to, the right to be free from the use of excessive force by law enforcement officers; the right to freedom of speech and freedom of

association, the right to reasonable medical care for serious injuries inflicted as a result of the use of excessive force by law enforcement officers and/or the right to equal protection and/or due process.

86.     As a result of the violation of the Plaintiff's rights under the United States and/or California Constitutions, Plaintiff is entitled to relief under California Civil Code Sections 52 and 52.1 against Defendants and/or each of them.

87.     Plaintiff is further informed and believes and thereon alleges that said acts and/or omissions by Defendant Robert Roche and/or Doe 1 and/or Does 6-100 and/or each of them, which violated Plaintiff's rights under the United States and/or California Constitutions, were intentional, willful, malicious, oppressive and/or done with a conscious and/or reckless disregard for the rights of the Plaintiff.  Therefore, Plaintiff prays for an award of punitive damages against Defendants Robert Roche and/or Doe 1.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY TRIAL DEMAND

88.     Plaintiff hereby demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as follows:

1.  For general and special damages to be determined according to proof;

2.  For punitive damages against Defendant Robert Roche or Doe 1, Does 6-100 and/or each of them, in amounts to be determined according to proof;

3.  For damages, including statutory damages under California Civil Code Sections 52 and 52.1;

4.  **For attorneys' fees pursuant to 42 U.S.C. § 1988, California Civil Code Sections 52 and 52.1 and/or other authorities in amounts to be determined according to proof;**

5.  **For costs of suit;**

6.  **For pre- and post-judgment interest as permitted by law;**

7.  **For such other and further relief as the Court may deem just and proper.**

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

**Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.**

Dated: August 22, 2013                    _____/S/_____
                                                                JAMES B. CHANIN
                                                                Attorney for Plaintiffs

FIRST AMENDED COMPLAINT
Olsen v. City of Oakland, et al., Case No. C12-06333 SI                    24