JAMES B. CHANIN  (SBN 76043)
JULIE M. HOUK  (SBN) 114968
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, California  94705
Telephone:      510.848.4752
Facsimile:      510.848.5819
Attorneys for Plaintiffs

RACHEL LEDERMAN (SBN 130192)
Rachel Lederman & Alexis C. Beach
Attorneys at Law
558 Capp Street
San Francisco, CA  94110
Telephone: 415.282.9300
Facsimile: 415.285.5066
Email:  rachel@beachledermanlaw.com

Attorneys for Plaintiff
Scott Olsen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT OLSEN, | CASE NO:  C12-06333 SI |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| vs. | |
| CITY OF OAKLAND; et al., | Date: 12/18/13 |
| Defendants. | Time: 10:00 a.m.  p.m. Courtroom: 10, 19th Floor The Honorable Susan Illston |

**1. Jurisdiction and Service:**

This Court has original jurisdiction over Plaintiff's claims brought pursuant to 42 U.S.C.

Section 1983 and supplemental jurisdiction over Plaintiff's related state law claims.  The City of

Oakland and Officer Robert Roche were named in the Plaintiff's initial Complaint for Damages and were served.  On September 5, 2013, the Court approved the parties' stipulation granting Plaintiff leave to file a First Amended Complaint.  All named Defendants in Plaintiff's First Amended Complaint have been served and have filed Answers to the First Amended Complaint.

**2. Summary of the Facts**

**a.  Plaintiff's Statement Regarding the Facts**

This case arose from an incident in which the Plaintiff, Scott Olsen, was shot in the head with a so-called, "less lethal" bean bag round, fired from a 12 gauge shotgun, by a police officer at an Occupy Oakland demonstration on October 25, 2011.  At the time Mr. Olsen was shot in the head, he was not posing any threat of causing anyone serious bodily harm or death.  In fact, Mr. Olsen was never charged with having committed any crime as a result of this incident and was never arrested as a result of his conduct during this incident.

OPD Officer, Robert Roche, also threw a CS blast grenade in the near proximity of Mr. Olsen, as he was lying on the ground and bleeding profusely from the head, when a number of Good Samaritans rushed to his aid.  Despite the fact that Mr. Olsen was in obvious need of emergency medical care, none of the police officers who were located within a short distance of Mr. Olsen made any effort to summon medical aid for him.  Instead, Good Samaritans transported Mr. Olsen by private vehicle to Highland Hospital.

Although former OPD Chief, Howard Jordan, admitted in press reports that Mr. Olsen had been shot by a member of the OPD and despite the fact that the City of Oakland admitted in an interrogatory response that is was more likely than not that Mr. Olsen was shot by Officer Robert Roche, the City of Oakland revealed for the first time on September 16, 2013, that it had documents pre-dating its discovery responses which disputed that Officer Roche shot the Plaintiff.

Defendants now appear to claim that Plaintiff could not have been shot by OPD officers since they claim they had green marking bean bag rounds during this event and there was no green residue found on Mr. Olsen's hat or person following the incident.

However, Plaintiff's counsel have developed compelling evidence that OPD officers assigned to this event had both non-marking and marking bean bag rounds and this evidence is entirely consistent with Mr. Olsen being shot by an OPD officer, even though there was no green marking dye found on his hat or person.  Furthermore, while Defendants based their green dye theory in large part on declarations of Officer Roche and two of his colleagues on the OPD SWAT Team, Officer C. Saunders and D. Burke, Defendants have heretofore been unable to produce an alleged "inventory" of the munitions used by the OPD that Officer Saunders claimed under oath was distributed to OPD team leaders prior to the incident.

Moreover, Defendants' claim that an inventory of the munitions used during this event was created flies in the face of the independent investigation of the OPD's response to Occupy Oakland on October 25, 2011, by the Frazier Group, LLC.  That investigation, which was discussed at length in the previous Case Management Statement, was led by Thomas Frazier, the former Commissioner of the Baltimore Police Department, who is currently serving as the court appointed OPD "Compliance Director."  In that investigation, the Frazier Group determined that the OPD had no such inventory or accountability system in place at the time of this incident to account for the munitions used during this event.  Therefore, Plaintiff believes that the Defendants' contention that Mr. Olsen was not shot by the OPD because of the green dye issue is a recent fabrication that was made up by Officer Roche and his colleagues in an effort to prevent Officer Roche from being terminated by the OPD for his conduct during this incident.

**b.  Defendants' Summary of the Facts**

**Robert Roche's Summary of the Facts**

Robert Roche began working as a police officer with the Oakland Police Department ("OPD") in 2002.  He is currently on leave.  While working as an OPD officer, Roche was assigned to patrol, the gang unit, and the training unit.  On October 25, 2011, OPD began the process of dismantling the Occupy Oakland encampment that had been set up at Frank Ogawa Plaza.  Roche is an OPD SWAT Team member.  Members of the SWAT Team, like Roche, who are trained in the use of both less-lethal munitions and chemical agents are arranged into sub-groups known as Tango Teams.

On October 25, 2011, Roche was working as a member of the Tango Team under the direction of Sergeant Holmgren to assist with the protests related to the Occupy Oakland movement. The OPD Tango Teams were equipped with chemical agent and shotguns using marking bean bag rounds.  The effort to control the protestors involved several outside agencies assisting the OPD, including Palo Alto Police Department and San Francisco County Sheriff's Department.  Throughout the day, protestors became violent and aggressive with police, including throwing rocks, bottles, and throwing back gas canisters and other chemical weapons that officers deployed into the crowd.

According to his recorded statement, Plaintiff Olsen arrived at the 14th and Broadway area at approximately 7:00 p.m.  Plaintiff Olsen saw several officers in a line behind a barricade.  He also saw large groups of protestors throughout the area.  He contacted his friend, Joshua Shepard at the location.   Mr. Shepard was wearing his U.S. Navy uniform and holding a flag in front of a skirmish line of officers in full riot gear, including face shields.

**Unlawful Assembly**

At about 7:30 p.m., an unlawful assembly was declared and the police ordered the crowd of demonstrators to disperse.  The crowd was repeatedly warned that they should leave the area and if they did not do so, then they could be arrested and that chemical agents may be used.  Some members of the crowd left, while others refused the lawful order to disperse and stayed.  Officers were instructed to put on their gas masks and to be ready to deploy chemical agents.

Plaintiff Olsen recalls the order to disperse.  Officers, including Roche, were instructed to disperse the crowd and arrest individuals who did not comply with orders to leave the area.

1   At approximately 7:40 p.m., Plaintiff Olsen was struck in the head with a projectile and fell to

2   the ground.  He recalls that people from the crowd came to assist him and he was taken to Highland

3   Hospital for medical treatment.  He was diagnosed with a fractured skull and other related injuries.

4   At approximately 7:40 p.m., Roche recalls deploying 3 marking bean bag rounds toward a

5   male, white suspect wearing a black bandana, black sweatshirt, and black pants who attempted to

6   pick up and throw back a burning can of CS at the officers.  Roche fired at this suspect from about 50

7   feet away, striking him in the upper right leg and right hip until he dropped the canister and ran away.

8   Several videos of the incident involving Plaintiff Olsen have been widely circulated on the

9   internet.  The video shows Plaintiff on the ground and a crowd of people rushing toward him.  As the

10   crowd surrounds the area where Plaintiff is lying on the ground, a flash of smoke and light appear in

11   the midst of the crowd.  It appears that an officer had thrown a chemical agent toward the crowd.

12   Roche recalls deploying a CS blast grenade towards a crowd of protestors who were rushing

13   toward the police skirmish line after the crowd was already ordered to disperse.  Roche did not see

14   Plaintiff Olsen on the ground and he did not intend to prevent anyone from assisting Plaintiff Olsen.

15   Roche had no intention of harming anyone with the CS blast and only deployed the gas to move the

16   crowd away from the officers.

17   Roche did deploy marking bean bag rounds on four other occasions on October 25, 2011

18   against protestors who were attempting to throw back canisters of chemical agents.  Each time, Roche

19   targeted the large muscle groups and extremities of the suspects.  Roche saw the marking dye on the

20   suspects' clothing.  He avoided firing at any suspect's head, neck, spleen, liver, kidneys, throat, spine,

21   or groin.

22

23   **3. Legal Issues:**

24   Plaintiff has alleged claims under 42 U.S.C. Section 1983 against the individual members of

25   the City of Oakland Police Department who subjected him to the violation of his constitutional rights

26   under the First, Fourth Amendment and Fourteenth Amendments to the United States Constitution.

27   The Plaintiff has also alleged claims against the City of Oakland for its customs, policies and/or

28

practices which caused and/or contributed to the violation of the Plaintiff's constitutional rights. Plaintiff has also alleged supplemental state law claims, which include claims based on common law negligence, battery, infliction of emotional distress and for the violation of the Plaintiff's federal and state constitutional rights under California Civil Code Section 52.1.

Plaintiff has not yet completed all discovery necessary to determine all of the legal issues that may be involved in this case.  However, it is likely these issues will include:

1.  Whether Defendants violated the Plaintiff's rights under the First, Fourth and/or Fourteenth Amendments to the United States Constitution as a result of the use of excessive force; the interference with Plaintiff's First Amendment rights and/or the denial of substantive due process and/or equal protection to the Plaintiff;

2.  Whether any of the individual Defendants are entitled to qualified immunity;

3.  Whether the Defendants are liable under California law for Plaintiff's damages based on common law negligence, battery, infliction of emotional distress and Civil Code Section 52.1;

4.  Whether Plaintiff was struck by a beanbag fired by an Oakland police officer.

5.  The amount of any general and special damages Plaintiff is entitled to recover from the Defendants;

6.  The amount of punitive damages Plaintiff is entitled to recover from Defendant Robert Roche; and,

7.  The amount of any attorneys' fees and costs Plaintiff is entitled to recover against Defendants.

**4. Motions:**

Plaintiff anticipates requesting the assistance of the Court again with respect to ongoing discovery disputes pursuant to the Court's standing order in the event that Plaintiff is unable to reach an informal resolution of the discovery issues with Defendants' counsel in the immediate near future.

Plaintiff is also considering the possibility of having to join other law enforcement officers and public entities as Defendants due to the Defendants' change in its position concerning the identity of the person who shot the Plaintiff as well as other appropriate motions relating to Defendants' untimely change in its position.

The parties reserve the right to bring other discovery and/or dispositive motions in the event that the need to do so arises.

**5. Amendment of Pleadings:**

As discussed above, Plaintiff may be forced to amend his Complaint to join additional public entities and law enforcement officers due to Defendants' untimely disclosures and new contention that Plaintiff was shot by someone other than Officer Roche.

**6. Evidence Preservation:**

Plaintiff has taken steps to preserve all relevant evidence.  Plaintiff is, however, concerned that in light of recent developments, including the fact that Defendants have been unable to produce the alleged "inventory" referred to in Officer Saunders' declaration, Defendants have not endeavored to preserve and produce all evidence relevant to this action.

**7. Disclosures:**

Plaintiff intends to fully comply with the disclosure requirements of F.R.C.P. 26.  However, Plaintiff has concerns about whether the Defendants have or will fully comply with their obligations under F.R.C.P. 26 due to the significant difficulties encountered by Plaintiff's counsel in obtaining appropriate discovery responses from the Defendants heretofore.

**8. Discovery:**

Plaintiff's counsel is continuing to encounter significant discovery problems which may force Plaintiff to request the Court's assistance to resolve.  Some of the problems relate to issues that were

previously resolved by the Court in its October 28, 2013 discovery order.  A summary of the current status of the ongoing discovery problems is set forth below:

### 1.  Stipulation and Order to Set Deposition Dates and Times in March – April 2014

Plaintiff's counsel endeavored to notice depositions of Defendant Roche and other key members of the OPD in November and December 2013.  At the November 8, 2013 settlement conference, the defense asked that the depositions be postponed and reset between March 21 and May 15, 2014, to give them more time to evaluate the case for settlement.  A condition of this postponement was that the defense would provide Plaintiff's counsel with dates and times certain for the depositions by November 18, 2013.  A stipulation to this effect was signed by all parties and was entered as an Order of the Court.  While the City provided Plaintiff's counsel with proposed deposition dates for some of the depositions on November 22, 2013, they overlapped with some of the deposition dates already agreed to by counsel for Defendant Roche and Officer T. Martin.  Therefore, Plaintiff's counsel is continuing to meet and confer on this issue with counsel for the City of Oakland at this time.

### 2.  The City of Oakland's Delivery of 24 File Boxes of Documents Purporting To Comply with the Court's October 28, 2013 Discovery Order Regarding the Corrupt, Defective and Missing Electronic Files

In response to the Court's October 28, 2013 Discovery Order, the City of Oakland delivered 24 file boxes of thousands of pages of documents to Plaintiff's counsel on November 18, 2013.  These documents were not identified, marked or segregated in any manner other than with Bates stamp numbers.  This was purportedly done to comply with the Court's Order that the City replace the previously produced defective electronic files with usable electronic and/or paper files.  Plaintiff's counsel believe that the manner in which these files were produced was done in bad faith and in retribution for bringing the discovery dispute to the Court's attention.

Since that time, Plaintiff's counsel have been meeting and conferring with Defendants' counsel because the manner in which these documents were produced violated F.R.C.P. 34, in that the City was obliged to produce the documents as they are maintained in the normal course of business or was required to labeled them and identify the discovery requests to which they were responsive. *See, e.g., FDIC v. Appleton*, 2012 U.S. Dist. LEXIS 187620 (C.D. Cal. 2012)(F.R.C.P. 34 prohibits "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought"); *Barton v. RCI, LLC,* 2013 U.S. Dist. LEXIS 46590 (D.N.J. 2013)( Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents).  In the event that this issue cannot be resolved informally, Plaintiff's counsel may be forced to request the Court's assistance.

### 3.  Inventory of Tango Team Boxes

Defendants have still failed to produce a copy of the inventory of the munitions contained in the Tango Team boxes, which was an issue that was included in the previous discovery dispute submitted to the Court.  Plaintiff's counsel is continuing to meet and confer with Defendants' counsel about the existence and/or whereabouts of this alleged inventory that Officer C. Saunders stated under oath in a declaration was supplied to all of the Tango Team leaders prior to the subject incident as discussed above.

### 4.  Electronic Media Issues

Plaintiff's counsel is continuing to meet and confer with the City of Oakland with regard to electronic media files that it produced that are corrupt, absent and/or unusable in their present form. Plaintiff's counsel are continuing to meet and confer with the City of Oakland on the electronic media issues.

### 5.  City of Oakland's Failure to Serve Responses to Third Sets of Interrogatories

**and Requests for Production of Documents**

The City of Oakland unilaterally violated a previous extension granted by Plaintiff's counsel to November 4, 2013 to serve its responses to Plaintiff's Third Sets of Interrogatories and Requests for Production of Documents.  Despite previous meet and confer efforts, the City has still failed to serve these responses.  Plaintiff's counsel may need the assistance of the Court in resolving this issue unless the City serves full and complete responses to these discovery requests without any further delay.

**6.  Internal Affairs Files Re Use of Bean Bag Munitions on 10.25.11 other than the Scott Olsen Incident**

Despite the fact that the Court ordered the City to produce these files to Plaintiff's counsel in its October 28, 2013 discovery order, it does not appear that the City has produced them.  It is also impossible for Plaintiff's counsel to determine whether they are included in the 24 file boxes of documents delivered to Plaintiff's counsel by the City on October 18, 2013.  Plaintiff's counsel is continuing to meet and confer with counsel for the City of Oakland on this issue.

**7.  Missing CID Investigation Documents Evidenced on the Property Log**

After Plaintiff's counsel noticed that the City had failed to produce the property log for the criminal investigation of the Scott Olsen incident conducted by the OPD Criminal Investigation Division, the City produced the log.  This log contained reference to additional documents and other evidence that the City had failed to produce to Plaintiff's counsel in its discovery responses.  Plaintiff's counsel are continuing to meet and confer with the City concerning the production of this additional evidence.

**8.  The Criminalistics File Re: Testing of Mr. Olsen's Hat**

While the OPD Crime Lab tested Mr. Olsen's hat and determined that Mr. Olsen had been shot with a munition containing lead (bean bag munitions are filled with lead birdshot), the only

document produced by the City was the final report of the Crime Lab.  Plaintiff's counsel have been meeting and conferring with counsel for the City to ascertain whether additional documents and evidence exists concerning the handling of Mr. Olsen's hat by the Crime Lab.

In the event that Plaintiff's counsel are unable to informally resolve the above issues with counsel for the City of Oakland, Plaintiff may be forced to bring these issues to the Court for resolution.  Hopefully, that will not become necessary.

**9. Class Actions:**

Not applicable.

**10. Related Cases:**

Not applicable.

**11. Relief:**

Plaintiff is seeking general damages for his past, present and future pain, suffering, emotional distress as well as permanent brain injuries, disabilities and disfigurement.  Plaintiff is also seeking to recover special damages for his past, present and future medical treatment, physical and vocational rehabilitation and for his lost income/loss of earning capacity sustained as a result of the subject incident. Plaintiff is still in the process of compiling the data supporting his claims for medical special damages and income losses due to this incident.  At the present time, Plaintiff is informed and believes and thereon states that the lien asserted by Healthcare Recoveries on behalf of Kaiser Permanente for the medical treatment it provided to the Plaintiff is in the sum of $207,612.22.  This, however, is not the final lien amount and is subject to change.  Plaintiff's' counsel have also received a lien notification from Alameda County Medical Center in the amount of $780.00.

Plaintiff will also be seeking to recover his attorneys' fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988, as well as, under California Civil Code Sections 52 and 52.1 in the event that he is the prevailing party in this matter.

**12. Settlement and ADR:**

Counsel for the parties attended a settlement conference before the Honorable Laurel Beeler on November 8, 2013.  The case did not settle at that time because the defense argued that they needed to conduct independent medical examinations of the Plaintiff's current condition.  A conference call with Judge Beeler concerning progress made toward settlement is scheduled for December 12, 2013.

**13. Consent to Magistrate Judge For All Purposes:**

Not applicable.

**14. Other References:**

Not applicable.

**15. Narrowing of Issues:**

Unknown at this time. The parties may be in a better position to discuss stipulations and/or other issues once the core discovery has been completed.

**16. Expedited Schedule:**

Plaintiff may need to expedite discovery in the event that the case is not settlement in the immediate near future due to the fact that Defendants are apparently now disputing that Officer Roche shot the Plaintiff so that Plaintiff has sufficient time to be able to join additional public entities and/or officers as defendants, if necessary.

**17. Scheduling:**

The following is the current schedule for pretrial preparation and trial:

| | |
|---|---|
| Fact Discovery Completion Date | June 10, 2014 |
| Initial Rule 26 Expert Disclosure | June 30, 2014 |
| Rebuttal Expert Disclosure | July 21, 2014 |
| Last Hearing Date for Dispositive Motion | August 15, 2014 |

| | |
|---|---|
| Expert Discovery Completion Date | August 22, 2014 |
| Pretrial Conference | 9/23/14 at 3:30 p.m. |
| Jury Trial | 10/6/14 at 8:30 a.m. |

**18. Trial:**

Plaintiff has demanded a jury trial.   Defendants have also demanded a jury trial.

**19. Disclosure of Non-party Interested Entities or Persons:**

Plaintiff knows of no other interested parties in the action at this time.

**20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.**

Not applicable at this time.


Dated: December 3, 2013                _____/S/_____
                                       JAMES B. CHANIN
                                       Attorney for Plaintiff

Dated: December 3, 2013                _____/S/_____
                                       RANDOLPH HALL
                                       Attorney for City of Oakland Defendants

Dated: December 3, 2013                _____/S/_____
                                       JOHN J. VERBER
                                       Attorney for Defendant
                                       ROBERT ROCHE

4827-0161-1031, v.  1

OLSEN V. CITY OF OAKLAND, ET AL., CASE NO. C12-06333 SI
JOINT CASE MANAGEMENT CONFERENCE STATEMENT